OPINION
{¶ 1} The appellant, Travis Lamb, appeals the July 23, 2003 judgment of conviction and sentence of the Marysville Municipal Court, assigning as error the trial court's decision to overrule Lamb's motion to suppress.
 {¶ 2} On April 6, 2003, Lamb was stopped by Trooper Beau Schmutz of the Ohio Highway State Patrol for crossing marked lanes while traveling westbound on State Route 33. Upon approaching the vehicle, Trooper Schmutz began speaking with Lamb and noticed that Lamb's eyes were bloodshot and glassy and that a strong odor of an alcoholic beverage was emitting from him. In addition, Lamb admitted to drinking one beer that night. Lamb was asked to exit the vehicle and perform three field sobriety tests: the horizontal gaze nystagmus ("HGN"), the one-legged-stand, and the walk-and-turn. Trooper Schmutz noticed six clues on the HGN, two clues on the one-legged-stand test, and none on the walk-and-turn. He then arrested Lamb for operating a motor vehicle while intoxicated. Lamb was taken to the local patrol post where he submitted to a breathalyzer test, which reflected a test result of 0.172. As a result, Lamb was charged with operating a motor vehicle while intoxicated in violation of R.C. 4511.19(A)(1) and (6), as well as with the marked lanes violation in accordance with R.C. 4511.33.
 {¶ 3} Lamb initially pled not guilty to these charges. Thereafter, his counsel filed a motion to suppress Lamb's statements as well as the results of the field sobriety tests and the breathalyzer, asserting that the trooper had no reasonable, articulable suspicion of a crime to warrant the stop and no probable cause to arrest Lamb. A suppression hearing was held on the matter on July 22, 2003, wherein Trooper Schmutz was the sole witness. At the conclusion of the hearing, the trial court determined that the results of the HGN and one-legged-stand tests were inadmissible because they were not performed in strict compliance with National Highway Traffic Safety Administration ("NHTSA") standards. However, the trial court concluded that the initial traffic stop was proper and that probable cause for Lamb's arrest existed given the totality of the circumstances. The following day, Lamb pled no contest to the charge of operating a motor vehicle while intoxicated and was sentenced accordingly. This appeal followed, and Lamb now asserts two assignments of error.
The trial court erred by finding that the law enforcement officer hadlegally sufficient facts to create an objective reasonable articulablesuspicion to initiate the traffic stop.
 The trial court erred by finding that probable cause existed to arrestappellant.
 First Assignment of Error {¶ 4} In his first assignment of error, Lamb maintains that the trial court erred in overruling his motion to suppress because the traffic stop by Trooper Schmutz violated his right to be free from unreasonable searches and seizures. Specifically, Lamb contends that no competent, credible evidence existed that he committed a lanes violation or any other traffic violation. In support of this contention, Lamb provides alternative reasons for his driving; i.e. that he was eating and the weather was windy that night. We find Lamb's argument to be without merit.
 {¶ 5} Initially, we note that when ruling on a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given the evidence presented. State v. Johnson (2000), 137 Ohio App.3d 847, 850. An appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v. Dunlap (1995),73 Ohio St.3d 308, 314. However, this process is two-fold, as an appellate court "must then conduct a de novo review of the trial court's application of the law to the facts." State v. Hodge, 147 Ohio App.3d 550,2002-Ohio-3053, at ¶ 9 (citations omitted).
 {¶ 6} The Ohio Supreme Court has held that "[t]he question whether a traffic stop violates the Fourth Amendment to the United States Constitution requires an objective assessment of a police officer's actions in light of the facts and circumstances then known to the officer." Dayton v. Erickson (1996), 76 Ohio St.3d 3, 6, citing UnitedStates v. Ferguson (6th Cir. 1993), 8 F.3d 385, 388. Therefore, when determining whether a violation of the Fourth Amendment has occurred, "an objective assessment of the officer's actions at the time of the traffic stop, and not upon the officer's actual (subjective) state of mind" must be made. Erickson, supra. Thus, the Court has held that "where an officer has * * * probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid. Id. at 11-12. However, probable cause for a investigatory stop is not always required. Rather, reasonable suspicion of illegal activity is sufficient. State v. Bobo (1988), 37 Ohio St.3d 177, 179, citing Terryv. Ohio (1968), 392 U.S. 1, 21. Reasonable suspicion is defined as the ability of the officer "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Bobo, 37 Ohio St.3d at 178, citingTerry, 392 U.S. at 20-21.
 {¶ 7} In the case sub judice, Trooper Schmutz testified that he stopped Lamb based on a lanes violation in accordance with R.C. 4511.33(A). However, Lamb contends that the videotape produced by the trooper did not show any such violation. Furthermore, Lamb contends that the trooper admitted during cross-examination that Lamb never crossed either the yellow lines dividing the driving lanes or the white edge marker.
 {¶ 8} Revised Code section 4511.33(A) provides:
Whenever any roadway has been divided into two or more clearlymarked lanes for traffic * * * the following rules apply:
 (A)A vehicle or trackless trolley shall be driven, as nearly as ispracticable, entirely within a single lane or line of traffic and shallnot be moved from such lane or line until the driver has firstascertained that such movement can be made with safety.
The Seventh District Court of Appeals has recently addressed this statute, specifically ascertaining the meaning of the phrase "as nearly as is practicable." State v. Hodge, 147 Ohio App.3d 550, 2002-Ohio-3053. In Hodge, the court examined the legislative intent of this phrase and held as follows: "The logical conclusion is that the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or carelessness. To believe that the statute was intended to allow motorists the option of when they will or will not abide by the lane requirement is simply not reasonable." Id. at ¶ 43. Thus, the court concluded that the officer in that case had a reasonable and articulable suspicion that a violation of the law occurred when he witnessed the defendant leave "the lane in which he was traveling when it was practicable to stay within his own lane of travel." Id. at ¶ 50.
 {¶ 9} The facts of this case are similar to those in Hodge. InHodge, the defendant insubstantially drifted leftward into the parallel lane for an unspecified period of time less than forty seconds. Id. at ¶ 49. In addition, the officer that stopped Hodge testified that "Hodge's partial crossing into the parallel lane of traffic posed little danger because there was no other traffic on the road at this time." Id. at ¶ 3. Nevertheless, the court found that this minor violation was a sufficient reason to stop Hodge's vehicle. Id. at ¶ 50.
 {¶ 10} Here, Trooper Schmutz testified that he observed Lamb's vehicle "cross over the center line with its left two tires, and then it jerked it over the white fog line with his right two tires." The trooper further testified that Lamb crossed these lines both prior to the activation of the camera in the patrol car and while the camera was taping. However, during cross-examination, Trooper Schmutz was asked, "Mr. Lamb never actually crossed either edge line, did he," to which the trooper answered in the negative. Nevertheless, during re-direct, the following discussion occurred between the prosecutor and Trooper Schmutz:
Q. Trooper, I'm sorry. I thought that I heard you testify thatthe defendant never crossed either edge line when he was driving.Is that — What did you (INAUDIBLE)?
 A. He didn't cross them and he just — and he drove over them.So crossing and driving over, he was — drove over them, but hedidn't —
* * *
Q. How many times did he cross over either line? When I say crossover, any part of his vehicle, any part of his tires, or —
 A. Twice.
* * *
Q. Okay. And how much of his vehicle crossed the center line the firsttime you observed?
 A. About a tire width.
* * *
Q. And how much of his vehicle crossed over the right edge line?
 A. Approximately a tire width. And his tire was on it, but also over iton the right hand side.
In addition, the videotape of Trooper Schmutz following Lamb and of the subsequent stop was admitted into evidence. Towards the beginning of this tape, the left tires of Lamb's vehicle are shown both on and across the center line.
 {¶ 11} Like the facts in Hodge, although Lamb committed only a minor violation of R.C. 4511.33, he, nonetheless, committed a violation when he left the lane in which he was traveling when it was practicable to stay within his own lane of travel, as there was no evidence that something or someone was blocking the roadway in any fashion. Moreover, the fact that he was eating does not excuse this violation nor does the windy weather in light of the fact that no evidence was provided that the wind velocity was so substantial that it made driving within one's own lane impracticable. Therefore, the trial court did not err in overruling Lamb's motion to suppress as to the propriety of the stop, and the first assignment of error is overruled.
 Second Assignment of Error {¶ 12} Lamb next contends that the trial court erred in overruling his motion to suppress based upon a lack of probable cause for his arrest. The Ohio Supreme Court has previously held:
In determining whether the police had probable cause to arrest anindividual for DUI, we consider whether, at the moment of arrest, thepolice had sufficient information, derived from a reasonably trustworthysource of facts and circumstances, sufficient to cause a prudent personto believe that the suspect was driving under the influence.
 State v. Homan (2000), 89 Ohio St.3d 421, 427, citing Beck v. Ohio
(1964), 379 U.S. 89, 91; State v. Timson (1974), 38 Ohio St.2d 122, 127. This determination is made based upon an examination of "the `totality' of facts and circumstances surrounding the arrest." Homan, supra (citations omitted).
 {¶ 13} In the case sub judice, the trial court suppressed the results of the HGN and one-legged-stand tests because these tests were not performed in strict compliance with NHTSA standards. However, inHoman, the Supreme Court noted that "probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests." Id. In fact, "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded for lack of strict compliance." Id. The Court then found that the facts of the case amply supported the defendant's arrest because the trooper observed that her eyes were red and glassy, that her breath smelled of alcohol, that she admitted to consuming alcohol, and her driving was erratic. Id.
 {¶ 14} Here, Trooper Schmutz testified that he stopped Lamb at 11:35 p.m. for crossing marked lanes. Upon approaching the vehicle, Trooper Schmutz noticed that Lamb's eyes were "bloodshot and glassy" and that Lamb had a strong odor of alcoholic beverage. In addition, Lamb admitted to having consumed one beer. Like Homan, the totality of these facts and circumstances amply supported Trooper Schmutz's decision to place Lamb under arrest. This is true even without the results of the suppressed field tests. Therefore, the trial court did not err in overruling the motion to suppress for lack of probable cause, and the second assignment of error is overruled.
 {¶ 15} For these reasons, the judgment of the Marysville Municipal Court is affirmed.
Judgment affirmed.
Walters and Cupp, JJ., concur.