OPINION
{¶ 1} The defendant-appellant, Jason Schmehl ("Schmehl"), appeals the judgment of the Auglaize County Municipal Court convicting him of operating a vehicle under the influence of alcohol, a violation of R.C. 4511.19(A)(1)(d), a misdemeanor of the first degree.
 {¶ 2} On February 26, 2005, at approximately 3:30 a.m., Patrolman Douglas Latimer ("Latimer") of the Minster Police Department and Patrolman Mike Skinner ("Skinner") of the New Bremen Police Department were on break at the Pak-a-Sak store in New Bremen. A man entered the store and told the officers he had almost been run off the road by somebody driving a gray pick-up truck with large tires. The man reported that the pick-up truck was traveling southbound on State Route 66. Latimer left the man with Skinner and drove south on Route 66. Skinner retrieved the license plate number of the vehicle the man was driving, and the man was later identified as Dajuan Price ("Price").
 {¶ 3} As he drove south on State Route 66, Latimer observed Schmehl's truck, a blue and silver Dodge Ram with large tires, turn right onto East Third Street in the Village of Minster. The truck made another turn onto Lincoln Street. As he followed the truck, Latimer observed it travel left of center so he effectuated a traffic stop. Schmehl admitted to consuming three beers at his home, and Latimer administered several field sobriety tests, including the horizontal gaze nystagmus ("HGN"). Schmehl was subsequently arrested. Latimer transported Schmehl to the St. Mary's Police Department, where he administered one breath-alcohol test. Because the results were inconclusive, Latimer waited 20 minutes and administered a second test using a BAC Datamaster, which showed results of .150 grams of alcohol per 210 liters of breath.
 {¶ 4} On May 4, 2005, Schmehl filed a motion to suppress evidence seeking the exclusion of all evidence obtained from the traffic stop. Schmehl argued that Latimer "did not have probable cause or reasonable, articulable suspicion" to stop him. Second, Schmehl argued that a collection of bodily substances for alcoholic drug testing must be made within two hours from the alleged violation, and he was not tested within the time limit. Finally, Schmehl argued that Latimer did not enforce a statutory 20 minute observation period prior to conducting the breathalyzer test, and a radio frequency interference check was not performed as required under the Ohio Administrative Code.
 {¶ 5} The trial court held a suppression hearing on June 9, 2005. The State of Ohio ("State") presented testimony from Skinner and Latimer. Schmehl presented testimony from his father, Robert Schmehl. A videotape, photographs, and a packet containing various documents were admitted into evidence. The trial court filed a journal entry on June 30, 2005 overruling Schmehl's motion. The court found that Latimer "had reasonable cause to stop the vehicle simply because of the oral statement of Mr. Price. He was a citizen informant who made a face to face report to the officer of his observations." Journal Entry, Jun. 30, 2005. The court also found probable cause for the arrest, that the breathalyzer test was performed within the two hour time limit, the 20 minute observation period was properly completed, and the BAC DataMaster was properly tested for radio frequency interference. Id. Schmehl appeals from the trial court's judgment and asserts the following assignments of error:
The Municipal Court of Auglaize County, Ohio committedreversible error in failing to suppress any evidence obtainedfollowing the stop of Jason Schmehl's vehicle, for the officerlacked the required reasonable suspicion to effectuate the stopwithout violating Jason Schmehl's Fourth Amendment rights.
 The Municipal Court of Auglaize County, Ohio committedreversible error in failing to suppress any evidence followingthe arrest of Jason Schmehl as the officer did not have probablecause for arrest.
 The Municipal Court of Auglaize County, Ohio committedreversible error in failing to suppress evidence stemming fromthe results of the BAC Data Master tests obtained from JasonSchmehl, as they did not meet the 2 hour limit required underOhio Rev[.] Code §§ 4511.19(D).
 The Municipal Court of Auglaize County, Ohio committedreversible error in failing to suppress evidence stemming fromthe BAC Data Master tests, as the officers administering the testdid not adhere to Ohio Adm. Code § 3701-53-02(C) requiring thattests should not be administered within the range of radiointerference.
 {¶ 6} The appeal of a trial court's decision on a motion to suppress evidence presents mixed questions of law and fact.State v. Dixon, 141 Ohio App.3d 654, 658, 2001-Ohio-2120,752 N.E.2d 1005. Because the trial court determines the weight of the evidence and witness credibility during a suppression hearing, we are bound to accept its findings of fact if supported by competent, credible evidence. State v. Norman,136 Ohio App.3d 46, 51, 52, 1999-Ohio-961, 735 N.E.2d 953 (citations omitted);State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. However, we review de novo whether those facts meet the applicable legal standard. Dixon, supra at 659 (citing Statev. Anderson (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034).
 {¶ 7} In the first assignment of error, Schmehl contends Latimer did not have reasonable suspicion or probable cause to effectuate a traffic stop. Schmehl contends the tip was unreliable because Price failed to identify himself to Latimer and he failed to provide an adequate vehicle description. In response to Schmehl's arguments, the State contends that Price's failure to identify himself at the Pak-a-Sak is irrelevant because he gave "sufficient information to Ptl Skinner that allowed officers to later find him and obtain a written statement, thus making an identified informant." The State also contends, "[t]he fact that the Defendant/Appellant might not be found guilty beyond a reasonable doubt of the minor misdemeanor [of driving left of center] does not defeat the much lower standard of reasonable articulable suspicion." For the reasons stated herein, we find probable cause for the stop based on a traffic violation.
 {¶ 8} The Fourth Amendment of the United States Constitution prohibits warrantless searches and seizures, which renders them per se unreasonable unless an exception applies. See Katz v.United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507,19 L.Ed.2d 576. An investigative stop, or Terry stop, is a common exception to the warrant requirement. Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. When a police officer stops a vehicle and detains its occupants, he has "seized" it and the occupants within the meaning of the Fourth andFourteenth Amendments of the United States Constitution. See Terry, supra at 8, 9. Before stopping a vehicle, the officer must have a reasonable suspicion, supported by specific and articulable facts, that criminal behavior has occurred, is occurring, or is imminent. State v. Chatton (1984), 11 Ohio St.3d 59, 61,463 N.E.2d 1237, certiorari denied, 469 U.S. 856, 105 S.Ct. 182,83 L.Ed.2d 116. In determining whether an officer has reasonable suspicion to effectuate a traffic stop, a court must consider the "totality of the circumstances." Maumee v. Weisner,87 Ohio St.3d 295, 299, 1999-Ohio-68, 720 N.E.2d 507 (citing UnitedStates v. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690,66 L.Ed.2d 621). "Under this analysis, `both the content of information possessed by police and its reliability' are relevant to the court's determination." Id. (quoting Alabama v. White
(1990), 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301).
 {¶ 9} However, a vehicle stop effectuated with probable cause that a traffic violation has occurred, or was occurring, is reasonable per se. See Whren v. United States (1996),517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89; Dayton v. Erickson,76 Ohio St.3d 3, 1996-Ohio-431, 665 N.E.2d 1091, at syllabus. The holding in Erickson was based largely on the reasoning of the Sixth Circuit Court of Appeals in United States v. Ferguson
(C.A.6, 1993), 8 F.3d 385, where the court stated:
"[w]e focus not on whether a reasonable officer `would' havestopped the suspect (even though he had probable cause to believethat a traffic violation had occurred), or whether any officer`could' have stopped the suspect (because a traffic violation hadin fact occurred), but on whether this particular officer infact had probable cause to believe that a traffic offense hadoccurred, regardless of whether this was the only basis or merelyone basis for the stop. The stop is reasonable if there wasprobable cause, and it is irrelevant what else the officer knewor suspected about the traffic violator at the time of the stop.It is also irrelevant whether the stop in question issufficiently ordinary or routine according to the generalpractice of the police department or the particular officermaking the stop."
 Erickson, supra at 9-10 (quoting Ferguson, supra at 391-392) (emphasis added). The Whren and Erickson holdings apply to Terry stops, and therefore, "where a police officer stops a vehicle based on reasonable articulable suspicion or probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable". McComb v. Andrews,
3rd Dist. No. 5-99-41, 2000 WL 296078, at * 5. Because driving left of center is a traffic violation, an officer who witnesses a driver violating R.C. 4511.25(A)[1] would be justified in effectuating a traffic stop.
 {¶ 10} We note that the trial court made no factual findings as to the traffic violation. The evidence indicates that Lincoln Street is a two-lane road, there is a solid, double yellow line in the middle of the road by the school, and the road is unmarked where the alleged traffic violation occurred, although the width of the road does not deviate between the marked and unmarked sections. The video taken from Latimer's patrol car indicates that cars were parked along the right side of the length of the road, and it indicates several cars parked along the left side of the road. Hearing Tr., Sep. 21, 2005, at Ex. A. The video shows Schmehl driving in what appears to be the middle of the road, in that there seems to be an approximately equal distance between Schmehl's truck and each side of the road. Id. If this were the only evidence before us, we may have been persuaded to find a lack of probable cause for the violation based on the obstructions in the roadway (the parked cars), the width of Schmehl's truck, and the absence of on-coming traffic. See R.C.4511.25(A)(2); Andrews, supra at * 5. However, Latimer testified that he effectuated the stop based on the traffic violation. Hearing Tr., 18:7-10; 37. Latimer also testified that he observed, and the beginning of the video shows, the most severe act of driving left of center because Schmehl's tires almost touched the curb on the left side of the road. Id. at 33:1-6. Although we were unable to discern such egregious driving upon our review of the video, we may not weigh the officer's credibility. See id. at Ex. A. Latimer had probable cause to effectuate a traffic stop based on a violation of R.C.4511.25(A), which renders moot the issue of whether he had reasonable suspicion for the stop based on the informant's tip. Therefore, the first assignment of error is overruled.
 {¶ 11} In the second assignment of error, Schmehl contends Latimer did not have probable cause for arrest when the only evidence came from the HGN. The State responds that Latimer had probable cause based on Schmehl's driving, the HGN, Schmehl's admission that he consumed three beers, the strong odor of alcohol emanating from Schmehl, and his slurred speech and bloodshot eyes.
 {¶ 12} In determining whether an officer had probable cause to make an arrest for driving under the influence, courts must consider "`whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.'" State v. Lamb, 3rd Dist. No. 14-03-30,2003-Ohio-6997, at ¶ 12 (quoting State v. Homan,89 Ohio St.3d 421, 427, 2000-Ohio-212, 732 N.E.2d 952 (citations omitted)). In making this determination, the court must consider the totality of the circumstances. Id. (quoting Homan, supra at 427 (citations omitted)). Probable cause may be found even where no field sobriety tests were administered or where the results of field sobriety tests are suppressed. Id. at ¶ 13 (quotingHoman, supra at 427).
 {¶ 13} In this case, Latimer testified that he smelled the strong odor of alcoholic beverage emitting from Schmehl's person when he exited the truck. Hearing Tr., at 19:11, 13. Latimer observed slightly slurred speech and bloodshot eyes. Id. at 19:16. Schmehl admitted he consumed three beers at his home outside of New Bremen. Id. at 19:22. When asked where he was going, Schmehl first answered he was going to buy more beer, then he said he was buying cigarettes, and he finally stated that he was on his way to somebody else's house. Id. at 20:1-3. Latimer testified that prior to administering any field sobriety tests, and based on his experience both as a police officer and a lay person, he believed Schmehl was intoxicated due to "his driving, a the [sic] smell of alcohol, his admittance to use, a slurred speech and blood shot eyes prior to giving (inaudible)." Id. at 20:8-9.
 {¶ 14} Latimer administered the HGN and two field sobriety tests. On the HGN, he received six clues, which would indicate an 80% probability that the person has a blood alcohol content of .10 or higher. Id. at 21:3-14. Latimer admitted that Schmehl performed the walk and turn and the one-legged-stand test fairly well, and if his opinion had been based solely on Schmehl's performance of these two tests, he would not have believed Schmehl was intoxicated. Id. at 22:12-14. However, based on the HGN and the other factors listed above, Latimer believed Schmehl was intoxicated. Id. at 22:15-17. Based on this record, the totality of the circumstances indicates that Latimer had probable cause to arrest Schmehl for driving under the influence. SeeLamb, supra at ¶ 14 (although the results of the HGN and one-legged-stand test were suppressed, the officer had probable cause for arrest based on bloodshot and glassy eyes and a strong odor of alcoholic beverage). The second assignment of error is overruled.
 {¶ 15} In the third assignment of error, Schmehl contends he was given a breathalyzer test in violation of R.C. 4511.19(D) because more than two hours had transpired since the time of the violation. The State admits that the witnesses provided inconsistent evidence as to when the offense occurred; however, the State contends that the trial court did not err by using the times reflected on the video taken from Latimer's cruiser. R.C.4511.19(D) states:
[i]n any criminal prosecution or juvenile court proceeding fora violation of division (A) or (B) of this section or for anequivalent offense, the court may admit evidence on theconcentration of alcohol, drugs of abuse, or a combination ofthem in the defendant's whole blood, blood serum or plasma,breath, urine, or other bodily substance at the time of thealleged violation as shown by chemical analysis of the substancewithdrawn within two hours of the time of the allegedviolation.
(emphasis added). The statute clearly provides that a breath test must be administered within two hours of the violation.
 {¶ 16} In considering this issue, the trial court stated, "[t]he video made by the officer shows a clock time of 3:34.40 for the stop and 5:25 for the test. While the parties indicated that the court could use the tape to determine the time since all the other times appear to have been based upon clocks that were not synchronized, they obviously never checked the tape themselves." Journal Entry, at 2. The trial court's factual findings are supported by competent and credible evidence. The time on the video is clearly indicated, the officer did not stop the tape at any time, and the stop and test were recorded at the times mentioned by the trial court. Hearing Tr., at Ex. A. We cannot find that the trial court misapplied the facts to the law in this case. Based on the times displayed on the video, the final breath alcohol test was administered within the two hour limit required by R.C. 4511.19(D)(1). Even if the time on the video was not synchronized to any other time piece, the time recorded on the video was consistent. The third assignment of error is overruled.
 {¶ 17} In the fourth assignment of error, Schmehl contends that Latimer's "personal microphone transmitted during the entire duration of testing" so as to violate Ohio Adm. Code3701-53-02(C). In response, the State argues that Ohio State Patrol troopers substantially complied with the pertinent regulations in performing the RFI check. The State also contends that Schmehl's argument and supporting case law are based on a regulation, which has subsequently been amended so that there is no regulation prohibiting the use of any radio in the vicinity of a breath alcohol test.
 {¶ 18} The State bears the initial burden of demonstrating that a breath test was administered in substantial compliance with the Ohio Department of Health's regulations. See State v.Plummer (1986), 22 Ohio St.3d 292, 490 N.E.2d 902. If the State meets its burden, the defendant must prove "that he or she was prejudiced by a variation from the regulations." State v. ElMessoussi, 3rd Dist. No. 14-03-53, 2004-Ohio-2473, at ¶ 7
(citing State v. Lauer, 146 Ohio App.3d 354, 2001-Ohio-2291,766 N.E.2d 193 (citation omitted)).
 {¶ 19} Ohio Adm. Code 3701-53-04(A)(1) states:
[a] senior operator shall perform an instrument check onapproved evidential breath testing instruments and a radiofrequency interference (RFI) check no less frequently than onceevery seven days in accordance with the appropriate instrumentchecklist for the instrument being used. The instrument check maybe performed anytime up to one hundred and ninety-two hours afterthe last instrument check.
 The instrument shall be checked to detect RFI using ahand-held radio normally used by the law enforcement agency. TheRFI detector check is valid when the evidential breath testinginstrument detects RFI or aborts a subject test. If the RFIdetector check is not valid, the instrument shall not be useduntil the instrument is serviced.
In El Messoussi, supra, the appellant argued that the State failed to establish substantial compliance with Ohio Adm. Code3701-53-04. In that case, the State submitted into evidence "the BAC DataMaster Instrument Check Forms which included the dates of the BAC DataMaster instrument checks, the name of the operator of the checks and the results of the checks." El Messoussi, supra at ¶ 14. The State also presented the testimony of two police officers who had performed the checks both before and after the appellant was tested. Id. Both officers testified that they used their portable radios to test for RFI and reported that the BAC DataMaster had aborted. Id. at ¶¶ 11, 14. We found the above evidence sufficient to establish substantial compliance with Ohio Adm. Code 3701-53-04(A)(1).
 {¶ 20} In this case, the State presented less evidence than it did in El Messoussi because it did not present testimony concerning the RFI test. Instead, the State submitted into evidence a packet of documents collectively marked as State's Exhibit B. The first page of the packet was a certification signed by Lieutenant Daniel C. Lay, which indicated that he is the commanding officer of the Ohio State Highway Patrol, Post 6, and he is the "custodian of all documents concerning the calibration checks of the B.A.C. DataMaster" located at the St. Mary's Police Department. Lay certified that the attached documents were true and accurate copies. Included in the packet were two BAC Datamaster Instrument Check Forms, which indicate that the BAC Datamaster Latimer used on February 26, 2005 was tested on February 23, 2005 and March 2, 2005. The next documents certify that Jonathan Coffey and John Westerfield, who performed the RFI checks, are senior operators, and the last document certifies the test solution. In addition, the parties stipulated that the Ohio State Patrol troopers performed the RFI tests using the hand held radios issued to them. Hearing Tr., at 1:14-16; 2:3-4. We have previously held that a certified packet of documents, similar to what has been submitted here, is admissible under Evid.R. 902 and shows substantial compliance with the regulation. See State v. Reed, 3rd Dist. No. 15-03-08, 2004-Ohio-393, at ¶¶ 16-18; 21-22. Specifically, we noted:
[t]he instrument checklists were self authenticating underEvid.R. 902(4) because they were copies of public documents thatwere certified under seal as true and accurate copies. * * *Moreover, we find that the checklists were competent and credibleevidence that the instrument check and radio frequencyinterference check were performed as required by Ohio Adm. Code3701-53-04.
Id. at ¶ 22. In this case, the trial court found, and the record supports, substantial compliance with the regulations in performing the RFI checks both before and after Schmehl's blood alcohol was tested.
 {¶ 21} As the trial court noted, and the State argued, Schmehl has relied on case law, which is no longer applicable due to the amendment of Ohio Adm. Code 3701-53-02(C). The current version of the regulation became effective on September 30, 2002 and states:
[b]reath samples of deep lung (alveolar) air shall be analyzedfor purposes of determining whether a person has a prohibitedbreath alcohol concentration with instruments approved underparagraphs (A) and (B) of this rule. Breath samples shall beanalyzed according to the operational checklist for theinstrument being used and checklist forms recording the resultsof subject tests shall be retained in accordance with paragraph(A) of rule 3701-53-01 of the Administrative Code. The resultsshall be recorded on forms prescribed by the director of health.
The prior version of Ohio Adm. Code 3701-53-02(C) stated:
[a] radio frequency interference (RFI) survey shall beperformed for each breath testing instrument listed in paragraphs(A)(1) to (A)(3) and (A)(5) of this rule that is in operation ateach breath testing site. RFI surveys are not required for theinstrument listed in paragraph (A)(4) of this rule. Surveyresults shall be recorded on the form set for in appendix G tothis rule. The original RFI survey form and any subsequent RFIsurvey forms shall be kept on file in the area where tests areperformed. A new survey shall be conducted when a breath testinginstrument's spatial placement or axis is changed from thatdesignated in the most recent survey form. Radio transmittingantennae shall not be used within any RFI-affected zone duringconduct of a subject test or a calibration check.
Clearly, the current version of the regulation, unlike the former version, does not prohibit the use of transmitting antennae within the RFI affected zone of a BAC Datamaster. We have found no current regulation prohibiting the use of radios near a BAC Datamaster.
 {¶ 22} In making his argument that Latimer's microphone affected the breathalyzer test, Schmehl relies on State v.Witten (1990), 67 Ohio App.3d 135, 139, 586 N.E.2d 203 ("[t]he operation of breath-testing instruments is affected when radio transmissions are made within certain distances of the instrument.") and State v. McNamara (1997),124 Ohio App.3d 706, 715, 707 N.E.2d 539 ("[t]he plain meaning of Ohio Adm. Code § 3701-53-02(C) dictates that the state violates the regulation when unsurveyed radios are left `on' in the vicinity of the breath-testing instrument."). However, each of these cases relied on the former version of Ohio Adm. Code 3701-53-02(C).
 {¶ 23} In its judgment entry, the trial court noted that the Ohio State Patrol troopers performed RFI checks with their hand held radios, and the statute does not require RFI testing to be "repeated on all frequencies of all handheld radios for all agencies." Journal Entry, at 2. Finally, the trial court noted that Schmehl failed to "show that something occurred that actually affected his test." We agree with the trial court. As noted above, the State substantially complied with Ohio Adm. Code3701-53-04(A)(1), and Schmehl then had the burden of proving prejudice. The trial court found no facts indicating prejudice, and our review of the record supports its finding. Therefore, the fourth assignment of error is overruled.
 {¶ 24} Having overruled each assignment of error, the judgment of the Auglaize County Municipal Court is affirmed.
Judgment affirmed.
 Shaw, J., concurs.
 Rogers, J., concurs in judgment only.
[1] R.C. 4511.25(A) states: "[u]pon all roadways of sufficient width, a vehicle * * * shall be driven upon the right half of the roadway [.]"