[Cite as *State v. Lavelle*, 2023-Ohio-2102.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 14-23-08

    v.

THERESA A. LAVELLE,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marysville Municipal Court
Trial Court No. TRC2203118

**Judgment Affirmed**

**Date of Decision: June 26, 2023**

APPEARANCES:

    *Shaw R. Dominy* **for Appellant**

    *Courtland Perry* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Theresa A. Lavelle ("Lavelle"), appeals the January 19, 2023 judgment entry of the Marysville Municipal Court denying her motion to suppress evidence. For the reasons that follow, we affirm.

{¶2} This case stems from the July 2, 2022 traffic stop of the vehicle operated by Lavelle by Trooper Fernando Arriaga ("Tpr. Arriaga") of the Ohio State Highway Patrol. As a result of the traffic stop, Lavelle was cited for operating a vehicle under the influence of alcohol or drugs-OVI ("OVI") in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor.[1] (Doc. No. 1). On July 11, 2022, Lavelle entered a written not-guilty plea.

{¶3} On August 4, 2022, Lavelle filed a motion to suppress evidence arguing that Tpr. Arriaga did not have justification for the continued detention of her for his OVI investigation after stopping her vehicle. After a hearing on September 14, 2022, the trial court denied Lavelle's motion to suppress evidence.

{¶4} On January 19, 2023, Lavelle withdrew her not-guilty plea to OVI and entered a no-contest plea. The trial court accepted Lavelle's no-contest plea, found her guilty, and ordered her to serve three years of community-control sanctions with conditions.

---

[1] Additionally, Lavelle was charged with operating a motor vehicle without a valid license in violation of R.C. 4510.12(A)(1), an unclassified misdemeanor; for failing to wear a seatbelt properly in violation of R.C. 4513.263(B)(1), a minor misdemeanor; and for a speeding violation of R.C. 4511.21(D)(4), a minor misdemeanor. (Doc. No. 1). However, those cases are not before us on appeal.

{¶5} Lavelle filed her notice of appeal and raises a single assignment of error for our review.

**Assignment of Error**

**The trial Court [sic] erred by overruling the Defendant's *Motion to Suppress Evidence* because the trooper's continued detention of Ms. Lavelle for an O.V.I. investigation was not justified.**

{¶6} In his sole assignment of error, Lavelle argues that the trial court erred by denying her motion to suppress evidence. Particularly, Lavelle asserts that Tpr. Arriaga's unlawfully expanded the scope of his investigation from the traffic violations to an OVI investigation, and thus her continued detention was not justified under the circumstances.

*Standard of Review*

{¶7} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the

applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997), *superseded by state regulation on other grounds*, *State v. Schmehl*, 3d Dist. Auglaize No. 2-05-33, 2006-Ohio-1143, ¶ 22.

*Analysis*

**{¶8}** Here, Lavelle does not dispute the facts of her traffic stop. Instead, Lavelle contends the trial court incorrectly decided the ultimate issue raised in the motion to suppress, so we review her assignment of error to determine whether the facts meet the appropriate legal standard. Here, she disputes the duration of the time necessary to effect the original purpose of the stop (i.e., issuing the traffic citation).

**{¶9}** """"[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or warning.""" *State v. Elliot*, 5th Dist. Guernsey No. 18 CA 22, 2019-Ohio-4411, ¶ 21 quoting *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 12 quoting *State v. Keathley*, 55 Ohio App.3d 130, 131 (2nd Dist.1988). The scope and the duration of the stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325 (1983). Nevertheless, if, during the course of the traffic stop, the officer develops a reasonable, articulable suspicion that the occupants of the vehicle are engaged in criminal activity unrelated to the officer's original justification for the stop, the officer may expand the scope and duration of

the stop as reasonably necessary to investigate his new suspicion. *Batchili* at ¶ 15.
In determining whether a detention is reasonable, the court must look at the totality
of the circumstances. *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988).

{¶10} The facts reveal that that Tpr. Arriaga clocked Lavelle driving 103
miles per hour in a 70 mile-per-hour zone. Tpr. Arriaga activated his overhead
lights and turned his vehicle around to initiate a traffic stop of Lavelle. He testified
that Lavelle moved first from the passing lane to the driving lane and then eventually
to the berm. However, she was slow to stop her car. After Tpr. Arriaga initiated
the traffic stop, he noticed that Lavelle was not wearing her seatbelt properly.[2] He
then requested Lavelle's license, proof of insurance, and her vehicle registration.
While speaking to her as she was searching for her documents and identification,
Tpr. Arriaga noticed her speech to be thick and slurred. After finding the requested
documents, Lavelle handed Tpr. Arriaga an Ohio State identification card ("state
ID"). When Tpr. Arriaga explained that it was only a state ID card, Lavelle
expressed confusion over the circumstances surrounding the state ID and a driver's
license.

{¶11} At this point, Tpr. Arriaga requested that Lavelle step out of the
vehicle to discuss the state ID. While talking with her, the trooper detected an odor
of alcoholic beverage emanating from Lavelle. Thereafter, he placed her in his

---

[2] She had her seatbelt on, but it was tucked under her arm.

cruiser to confirm (through dispatch) whether or not she was a licensed driver. Tpr. Arriaga testified that it was at that moment he expanded the scope of his investigation from the traffic violations to an OVI investigation.

{¶12} Lavelle argues that the trooper's expanded OVI investigation was not justified based upon these facts. We disagree. These facts support that Tpr. Arriaga had a reasonable, articulable suspicion for the expanding scope of his investigation, which justified his continued detention of her and ultimately, probable cause to arrest Lavelle.[3]

{¶13} Based on the foregoing and under the totality of the circumstance, we conclude that Tpr. Arriaga possessed a "reasonable, articulable suspicion" which was supported by "specific and articulable facts" that justified the expansion of the scope of his traffic-violation investigation to an OVI investigation, and thus his continued detention of Lavelle. Consequently, the trial court did not err by overruling Lavelle's motion to suppress evidence.

{¶14} Accordingly, Lavelle's assignment of error is overruled.

---

[3] While Tpr. Arraiga was verifying Lavelle's identification, she admitted to drinking two glasses of wine at home before driving. This led Tpr. Arriaga to request that she perform field sobriety tests ("FST"). Upon removal of her hat and eyeglasses for the Horizontal Gaze Nystagmus ("HGN") test, Tpr. Arriaga observed Lavelle's red, bloodshot, glassy eyes. Following his administration of the HGN test, he testified that he observed six out of six clues. Moreover, after he arrested her and transported her to the Ohio State Highway Patrol Post, she admitted to being intoxicated at a level three on a scale of one to 10.

{¶15} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER, P.J. and WALDICK, J., concur.**

**/jlr**