OPINION
{¶ 1} Defendant-appellant, James Thompson (hereinafter "Thompson"), appeals the judgment of the Marysville Municipal Court, finding him guilty of Failing to Drive Within Marked Lanes, in violation of R.C. 4511.33 and Operating a Motor Vehicle with a Prohibited Concentration of Alcohol, in violation of R.C. 4511.19(A)(4). Thompson was sentenced to three days in jail, a fine of $300, payment of costs, and a 180-day driver's license suspension.
 {¶ 2} On March 17, 2004, Ohio State Highway Patrolman Timothy Ehrenborg observed Thompson's vehicle drift across the right marked lane three times over a distance of approximately one mile. As a result of these observations, Trooper Ehrenborg stopped Thompson's vehicle on an allegation of failing to drive within marked lanes, in violation of R.C.4511.33. When Trooper Ehrenborg approached Thompson in his vehicle, the trooper noticed a strong odor of alcoholic beverage. Trooper Ehrenborg further observed that Thompson's face was flushed and that his eyes were glassy and bloodshot. Thompson admitted to drinking three large glasses of beer.[1]
 {¶ 3} As a result of his observations and Thompson's statement, Trooper Ehrenborg conducted field sobriety tests, none of which Thompson successfully performed. Thompson was thereby arrested and transported to a Highway Patrol Post where he submitted to a breath test approximately one hour and twenty minutes after his vehicle was stopped. The test indicated that Thompson had a concentration of .081 grams of alcohol per 210 liters of breath, in excess of the statutory limit of .080 grams. As a result of the test, Thompson was charged with Failing to Drive Within Marked Lanes, in violation of R.C. 4511.33, Operating a Motor Vehicle While Intoxicated, in violation of R.C. 4511.19(A)(1) and Operating a Motor Vehicle with a Prohibited Concentration of Alcohol, in violation of R.C. 4511.19(A)(4). Thompson subsequently entered a not guilty plea to all charges.
 {¶ 4} On March 25, 2004, Thompson filed a Motion to Suppress Evidence, challenging the majority of the evidence, including the trooper's reasons for stopping Thompson's vehicle and the administration of the field sobriety tests. Following a hearing, the trial court found that the trooper had reasonable articulable suspicion to stop Thompson, probable cause to arrest and administered the field sobriety tests in compliance with testing standards. The trial court also determined that the breath testing instrument met the requirements of the Ohio Department of Health regulations and would be admissible at trial.
 {¶ 5} The charge of Operating a Motor Vehicle While Intoxicated was subsequently dismissed and, on August 23, 2004, the matter proceeded to a jury trial on the charges of Failure to Drive Within Marked Lanes and Operating a Motor Vehicle with a Prohibited Concentration of Alcohol. Following trial, Thompson was found guilty on both charges and sentenced accordingly.
 {¶ 6} It is from this conviction that Thompson appeals, setting forth five assignments of error for our review. For ease of analysis, we will discuss Thompson's assignments of error out of order.
 ASSIGNMENT OF ERROR NO. IV The trial court erred in finding that law enforcement had reasonablearticulable suspicion to stop Appellant.
 {¶ 7} In this assignment of error, Thompson maintains that the trial court erred in overruling his motion to suppress evidence because Trooper Ehrenborg lacked a reasonable, articulable suspicion to stop Thompson's vehicle, thereby violating his Fourth Amendment right to be free from unreasonable searches and seizures. Specifically, Thompson contends that no competent, credible evidence existed that he failed to drive within marked lanes, in violation of R.C. 4511.33. Alternatively, Thompson argues that if he did, indeed, cross the right edge line, there was a reasonable explanation for doing so — allowing more room for another vehicle to pass on the left.
 {¶ 8} When ruling on a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given the evidence presented. Statev. Johnson (2000), 137 Ohio App.3d 847, 850. An appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v. Dunlap (1995), 73 Ohio St.3d 308,314. However, an appellate court must also conduct a de novo review of the trial court's application of the law to the facts. State v. Hodge,147 Ohio App.3d 550, 2002-Ohio-3053, at ¶ 9, citations omitted.
 {¶ 9} The Ohio Supreme Court has held that the question whether a traffic stop violates the Fourth Amendment to the United States Constitution requires an "objective assessment of a police officer's actions in light of the facts and circumstances then known to the officer." Dayton v. Erickson (1996), 76 Ohio St.3d 3, 6, citation omitted. Where an officer has probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid. Id. at 11-12. To conduct an investigatory stop, an officer must have a "reasonable suspicion" of illegal activity. Terryv. Ohio (1968), 392 U.S. 1, 21. "Reasonable suspicion" is defined as the ability of the officer "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Id. at 20-21.
 {¶ 10} In the case sub judice, Trooper Ehrenborg testified that he was following Thompson's vehicle on March 17, 2004 and that he observed the vehicle drift across the right edge line approximately one tire width, then drift back into the driving lane. Trooper Ehrenborg observed Thompson's vehicle drift across the right edge line a second and third time and then drift back into the driving lane within a distance of approximately one mile. After observing Thompson's vehicle cross the right edge line three times, Trooper Ehrenborg proceeded to stop Thompson's vehicle for failure to drive within marked lanes, a violation of R.C.4511.33.
 {¶ 11} R.C. 4511.33 provides in pertinent part:
Whenever any roadway has been divided into two or more clearlymarked lanes for traffic * * * the following rules apply:
 (A)A vehicle or trackless trolley shall be driven, as nearly as ispracticable, entirely within a single lane or line of traffic and shallnot be moved from such lane or line until the driver has firstascertained that such movement can be made with safety.
 {¶ 12} The Seventh District Court of Appeals has recently addressed this statute, specifically ascertaining the meaning of the phrase "as nearly as is practicable," finding that the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or carelessness. See State v. Hodge, 147 Ohio App.3d 550,2002-Ohio-3053
 {¶ 13} In State v. Lamb (2003), 3d App. No. 14-03-30, 2003-Ohio-6997, this court determined that although the defendant committed only a minor violation of R.C. 4511.33, he, nonetheless, committed a violation "when he left the lane in which he was traveling when it was practicable to stay within his own lane of travel, as there was no evidence that something or someone was blocking the roadway in any fashion." Id. at ¶ 11.
 {¶ 14} We find the reasoning of Lamb to be applicable to the case herein. Despite Thompson's claims that he was not speeding, that he never crossed the center line, that there was no traffic to his left or right and that he was in no danger of hitting anything, evidence was presented that he, nevertheless, failed to drive within the marked lane of travel. Moreover, no other evidence was provided that any particular conditions made driving within his own lane impracticable.
 {¶ 15} Therefore, we must conclude that Trooper Ehrenborg had a reasonable and articulable suspicion that a violation of the law occurred when he witnessed Thompson's vehicle drift three times from the lane in which he was traveling when it was practicable to stay within his own lane of travel. Accordingly, we do not find that the trial court erred in overruling Thompson's motion to suppress as to the propriety of the stop.
 {¶ 16} Thompson's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. V The trial court erred in finding that law enforcement had probablecause to arrest Appellant.
 {¶ 17} Even if Trooper Ehrenborg had reasonable articulable suspicion to stop Thompson's vehicle, Thompson contends that the trial court erred in overruling Thompson's motion to suppress as to probable cause for Thompson's arrest. Thompson argues that he did not display erratic driving, did not slur his speech and was not unsteady on his feet. Based on the circumstances, Thompson asserts that no probable cause existed for his arrest.
 {¶ 18} In determining whether the police had probable cause to arrest an individual for Operating a Motor Vehicle while Intoxicated, we must consider whether, at the moment of arrest, the police had information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. State v. Homan (2000), 89 Ohio St.3d 421, citations omitted. In making this determination, we will examine the "totality" of facts and circumstances surrounding the arrest. See Statev. Miller (1997), 117 Ohio App.3d 750, 761.
 {¶ 19} Upon the stop of Thompson's vehicle, Trooper Ehrenborg testified that he immediately detected an odor of an alcoholic beverage. Additionally, he observed that Thompson's face was flushed and his eyes were glassy. Upon questioning, Thompson stated to the trooper that he had consumed three large glasses of beer.
 {¶ 20} Based on these observations, Trooper Ehrenborg testified that he conducted standard field sobriety tests with Thompson. Thompson was given the horizontal gaze nystagmus test, and asked to perform the one leg stand test and the walk and turn test. Trooper Ehrenborg testified that Thompson displayed six out of six clues of intoxication during the nystagmus test. Additionally, the trooper stated that Thompson failed to maintain his balance during the walk and turn test and during the one leg stand. Trooper Ehrenborg further testified that he decided to arrest Thompson based on his observations of Thompson's driving, as well as Thompson's appearance and his performance of the field sobriety tests.
 {¶ 21} Considering the totality of these circumstances, we find that Trooper Ehrenborg had sufficient information to cause a prudent person to believe that Thompson was driving under the influence. Therefore, we do not find that the trial court erred in overruling Thompson's motion to suppress, finding that probable cause existed.
 {¶ 22} Thompson's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The trial court erred in excluding Appellant's expert witnesstestimony.
 {¶ 23} Prior to jury selection, the state made a motion in limine to request the exclusion of the testimony of Thompson's expert witness, Dr. Alfred Staubus. The trial court agreed, however, to listen to Dr. Staubus's testimony, before the jury was chosen, to determine its admissibility. According to Dr. Staubus, he was prepared to testify that, in his opinion, there is a biological variability of .020 grams per 210 liters of breath in all breath samples and, due to this variance, at the time of Thompson's breath alcohol test Thompson could have been above or below the legal limit, considering that his test result was .081 grams per 210 liters of breath. Dr. Staubus further stated, however, that assuming Thompson's general characteristics and the amount of food and alcohol he consumed on March 17, 2004, his breath alcohol concentration would have been between .035 and .067 grams per 210 liters of breath at the time his vehicle was stopped.
 {¶ 24} The trial court granted the state's motion in limine, determining that Dr. Staubus's testimony should be excluded based on its finding that a portion of the testimony was attacking the validity of the breath alcohol test, a practice the Ohio Supreme Court found impermissible in State v. Vega (1984), 12 Ohio St.3d 185. Moreover, the trial court concluded that there were too many variables regarding Thompson's condition on March 17, 2004 for Dr. Staubus's testimony to aid the trier of fact. Following this ruling, the trial court advised Thompson that he would be free to make a proffer of Dr. Staubus's testimony after the jury had been impaneled.
 {¶ 25} Thompson contends that he was prejudiced by the trial court's exclusion of Dr. Staubus's testimony. Thompson argues that the doctor's testimony was excluded in error because the trial court misconstrued it as an attack on the general reliability of the breath testing device. Thompson asserts that, rather, Dr. Staubus's testimony was offered to challenge the weight to be given to the breath alcohol test result. Thompson alleges that Dr. Staubus's testimony was narrowly tailored to focus on Thompson's blood alcohol content at the time he was operating his vehicle to aid the trier of fact in determining whether Thompson had a prohibited concentration of alcohol at the time he was stopped by Trooper Ehrenborg.
 {¶ 26} The established rule in Ohio is that the grant or denial of a motion in limine is not a ruling on the evidence. State v. Grubb (1986),28 Ohio St.3d 199, 200-201. The ruling is preliminary and thereby requires the parties to raise specific evidentiary objections at trial in order to permit the trial court to consider the admissibility of the evidence in its actual context. Id. at 202. As an appellate court, we need not review the propriety of a grant or denial of a motion in limine unless the claimed error is preserved by a timely objection when the issue is actually developed at trial. See State v. Overmyer, 3d Dist. No. 11-00-07, 2000-Ohio-1785.
 {¶ 27} In the case sub judice, although Thompson was given permission by the court to proffer Dr. Staubus's testimony at trial, the record before us reflects that he never did so. This claimed error was, therefore, not preserved for appeal. See State v. Schubert (Dec. 22, 1986), 3d Dist. No. 13-85-22.
 {¶ 28} Consequently, Thompson's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III Appellant was denied effective assistance of counsel under theSixth Amendment to the United States Constitution by counsel's failure topreserve the trial court's error by excluding expert testimony.
 {¶ 29} Thompson argues, within this assignment of error, that as a result of his trial counsel's failure to proffer the testimony of Dr. Staubus and, therefore, preserve the issue of Dr. Staubus's testimony for appeal, Thompson was denied the effective assistance of counsel. Thompson asserts that counsel's failure to proffer Dr. Staubus's testimony fell below an objective standard of reasonable representation. Further, Thompson contends that but for counsel's failure to call Dr. Staubus as a witness at trial, the result of the proceeding would have been different.
 {¶ 30} It is well-settled that in order to establish a claim of ineffective assistance of counsel, appellant must show two components: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defense.State v. Kole (2001), 92 Ohio St.3d 303, 306. To warrant reversal, the appellant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington (1984), 466 U.S. 668.
 {¶ 31} In order to show that an attorney's conduct was deficient or unreasonable, the appellant must overcome the presumption that the attorney provided competent representation and must show that the attorney's actions were not trial strategies prompted by "reasonable professional judgment." Strickland v. Washington (1984), 466 U.S. 668, 687. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v.Sallie (1998), 81 Ohio St.3d 673, 675. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558. Instead, the errors complained of must amount to a substantial violation of defense counsel's essential duties to his client. State v. Bradley
(1989), 42 Ohio St.3d 136, 141, quoting State v. Lytle (1976),48 Ohio St.2d 391, 396.
 {¶ 32} After reviewing the record, we can not find that counsel's failure to proffer the testimony Dr. Staubus at trial was unreasonable under the circumstances. There are any number of reasons why counsel, as a matter of trial strategy, would not recall the doctor to testify. For example, trial counsel may have concluded that Dr. Staubus's testimony, once exposed to cross-examination on the numerous unaccounted for or unexplained variables of Thompson's condition on the night he was arrested, may not have been credible with the jury. Trial counsel may also have concluded that the state had failed to prove Thompson's guilt beyond a reasonable doubt and, therefore, Dr. Staubus's testimony was rendered unnecessary.
 {¶ 33} Moreover, even if counsel's failure to recall Dr. Staubus were unreasonable, we do not find that the result of the proceeding would have been different. Accordingly, Thompson's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. I The trial court erred in overruling Appellant's motion for acquittalpursuant to Criminal Rule 29.
 {¶ 34} Finally, Thompson argues that the trial court erred in denying his motion for acquittal pursuant to Crim.R. 29. Specifically, Thompson asserts that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Thompson asserts that, through cross-examination, he demonstrated that he was not under the influence of alcohol and that there was no way to determine if he had a prohibited concentration of alcohol at the time he was operating his vehicle.
 {¶ 35} Crim.R. 29 states that "the court on motion of a defendant * * * after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense * * *." The Ohio Supreme Court has set forth the sufficiency of the evidence standard as follows:
An appellate court's function when reviewing the sufficiency of theevidence to support a criminal conviction is to examine the evidenceadmitted at trial to determine whether such evidence, if believed, wouldconvince the average mind of the defendant's guilt beyond a reasonabledoubt. The relevant inquiry is whether, after viewing the evidence in alight most favorable to the prosecution, any rational trier of fact couldhave found the essential elements of the crime proven beyond a reasonabledoubt. State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 36} The charge against Thompson, in the case sub judice, was Operating a Motor Vehicle with a Prohibited Concentration of Alcohol, in violation of R.C. 4511.19(A)(4). R.C. 4511.19(A)(4) states that no person shall operate any vehicle if the person "has a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath."[2] Pursuant to R.C. 4511.19(A)(4), the prosecution only has to show more than a .08 concentration of alcohol in a defendant's breath sample. State v. Rains (1999), 135 Ohio App.3d 547,551-552. A showing of an excess concentration by the state as well as substantial compliance with the Ohio Department of Health Standards concerning the breath alcohol test is a per se violation of R.C.4511.19(A)(4). Id.
 {¶ 37} At trial, the state introduced evidence that Thompson's breath alcohol test result on the night of his arrest was .081 grams per 210 liters of breath, in excess of the legal limit. Additionally, the state presented the testimony of Trooper Ehrenborg that he had a valid senior operator's permit for the breath alcohol testing instrument; that he observed Thompson for twenty minutes prior to the test; calibrated the testing instrument; and asked Thompson to blow into the sample tube with a sterile mouthpiece. All of these steps were in compliance with testing regulations and standards.
 {¶ 38} After review, we find this evidence sufficient for the jury to have found all of the essential elements of the offense beyond a reasonable doubt. Accordingly, we do not find that the trial court erred in denying Thompson's motion for acquittal pursuant to Crim.R. 29.
 {¶ 39} Thompson's first assignment of error is overruled.
 {¶ 40} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
 Shaw, J., concurs.
 Rogers, J., concurs in judgment only.
[1] The amount of alcohol Thompson consumed was later determined to be three 24 oz. glasses, the equivalent of a six-pack of 12 oz. beers.
[2] Since the time of Thompson's arrest, R.C. 4511.19 has been amended by H.B. 163, effective Sept. 23, 2004. The statute cited is the version that was in effect on March 17, 2004, the date of Thompson's arrest.