[Cite as *State v. Jarrells*, 2013-Ohio-3813.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 99329

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ROBERT F. JARRELLS, JR.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-556216

**BEFORE:** Kilbane, J., S. Gallagher, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 5, 2013

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio 44067

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Fallon Radigan
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Robert Jarrells, Jr. ("Jarrells"), appeals his convictions for driving while under the influence. For the reasons set forth below, we affirm.

{¶2} In November 2011, Jarrells was charged with two counts of driving while under the influence in violation of R.C. 4511.19, with each count carrying a furthermore clause listing a prior felony conviction in violation of R.C. 4511.19.

{¶3} In April 2012, the state of Ohio ("State") filed a motion in limine, requesting that the trial court prevent the admission of the expert opinion of Dr. Alfred Staubus, Pharm.D., Ph.D. ("Dr. Staubus"). The State argues that his report amounted to a general attack on the reliability of the breathalyzer test, which is barred by *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984). Jarrells opposed, arguing that Dr. Staubus's expert opinion goes to the weight to be given to the breathalyzer test. The trial court held a hearing on the matter. At the hearing, the court stated:

> [I]f the ultimate opinion is [Jarrells] could have only tested at a blank, blank, blank, based on [the effect of mouth-alcohol contamination], then it goes to that being an invalid sample. If [the defense] expert is going to say, based on everything I know; three beers, eating McDonald's at this time, and the way the body metabolizes alcohol, he could never have tested at — [0.128] — but it goes to the accuracy of the test. He's saying the test is inaccurate. But the law is saying, no, these tests are accurate and admissible as long as the machine was working properly and all that stuff.

{¶4} After the hearing, the trial court granted the State's motion and issued the following opinion:

> State's motion in limine is hereby granted specifically as to the findings set

forth in the defendant's expert report authored by Dr. Staubus. If defendant calls Dr. Staubus as a witness in trial, the court will conduct a hearing out of the presence of the jury and revisit said ruling on the State's motion in limine.

{¶5} The matter proceeded to a jury trial in October 2012, at which the following evidence was adduced.[1]

{¶6} On the evening of November 2, 2011, Cleveland Police Officers Renee Collins ("Collins") and Ronald Meyers ("Meyers") were working basic patrol when they observed a vehicle in a no park zone. A female, later identified as Stacie Brickman ("Brickman"), was in the front passenger seat and a male, later identified as Jarrells, was in the driver seat. Collins wanted to check on the vehicle because Brickman was "hanging out the side of the door." Meyers turned their police cruiser around to go behind the parked vehicle. Meyers testified that when he placed his spotlight on the vehicle, Jarrells "became extremely scared, great big eyes" and gave him the "oh, shit" look. Meyers could see Jarrells grab the gear shifter, put the vehicle in gear and take off. The officers proceeded behind Jarrells and Brickman. Meyers testified that Jarrells made a left turn without using his turn signal and the license plate was not properly illuminated, so he activated the overhead lights to effectuate a traffic stop. Jarrells stopped the vehicle, opened the driver's side door, jumped out, and quickly walked toward the sidewalk. Collins approached Brickman and Meyers approached Jarrells. Collins secured Brickman and placed her in the back of the zone car. Both Collins and

---

[1] Prior to the start of trial, defense counsel stipulated to Jarrells's prior conviction as charged in the indictment.

Meyers observed open containers in the center console of the vehicle — one 22 ounce bottle of Mike's Hard Lemonade and one 22 ounce can of beer.

{¶7} Meyers exited the police cruiser and instructed Jarrells to stop. When Meyers asked for Jarrells's identification, he responded that he did not have a valid driver's license. Meyers testified that Jarrells was "obviously intoxicated." Based on his training, Meyers "could smell a strong odor of alcoholic beverage on him; glassy eyes; just slow movements." Meyers did not perform a nystagmus test on Jarrells, but by observing him, Meyers noticed that he did have the eye nystagmus. Meyers asked him to perform the field-sobriety tests, but he refused. Meyers cited Jarrells for operating a vehicle while intoxicated, changing course without a turn signal, failing to properly illuminate the license plate, and an open-container violation. He was then arrested and taken to city jail.

{¶8} Meyers took Jarrells to the OVI room once they arrived at the jail. Meyers met with Cleveland Police Officer Tom Hodous ("Hodous") to conduct the breathalyzer test because he was certified to operate the machine. A video recording of the interview with Jarrells and his breath-alcohol test was played for the jury. In the video, Jarrells stated that he had three beers. He also admitted that he drove the car ten feet because Brickman got sick and he wanted to drive her around the corner. Jarrells submitted to the breathalyzer test at 12:35 a.m. (he was cited at 11:15 p.m.), and the result of the test was 0.128.

{¶9} Hodous testified that he was certified to run the breath-alcohol test from June

10, 2011 to June 10, 2012. At the time of the test, he filled out the required form and completed the operational checklist. He also observed Jarrells for over 20 minutes before administering the test to prevent oral intake of any material. Hodous pressed the run button on the machine to obtain the results. Jarrells's test result was 0.128, which was over the legal limit of .08. The breathalyzer used in the instant case was the BAC DataMaster.

{¶10} Cleveland Police Officer John Healy ("Healy") testified that he is trained as a BAC operator. He has been certified for about 12 years to run the BAC DataMaster, which is the machine the department uses to measure an individual's blood alcohol content In November 2011, he was the only person calibrating the BAC DataMaster. He calibrates the machine every 7 days to a maximum of 192 hours. A logbook is kept for the machine, which contains the instrument check sheet he completes. He calibrated the machine on October 19, 2011, October 24, 2011, and November 1, 2011. If the machine malfunctioned between these dates of testing, he would have been notified immediately. Healy has performed tests with the BAC DataMaster for six years. He stated that a result of .08 or above, while using the BAC DataMaster, would result in an individual being charged with operating a vehicle while intoxicated.

{¶11} Jarrells called Brickman to testify on behalf of the defense. Brickman testified that at the time of the incident, she and Jarrells were in a relationship. On the night in question, Brickman picked up Jarrells and they stopped for food at McDonalds. Then, they went to the convenience store where they purchased a six pack of beer and a

bottle of Mike's Hard Lemonade. After they left the convenience store, Brickman began to feel ill while she was driving. She pulled over to the side of the road and turned the engine off. Brickman and Jarrells began to get intimate and she began to feel ill again. She exited her car and went to the passenger's side, which was along the curb, and began to vomit. Jarrells exited the vehicle to check on Brickman. Brickman and Jarrells then got back into the car, but this time Brickman sat in the passenger's seat and Jarrells sat in the driver's seat. They began to get intimate again. Brickman felt ill again and exited her car. While she was out of her car, she observed the police cruiser come around the corner. Jarrells turned the engine on and moved the car to the corner. The police then pulled up behind the car and subsequently initiated the traffic stop.

{¶12} At the conclusion of trial, the jury found him guilty of both counts of driving while under the influence. Both counts merged for purposes of sentencing, and the State elected to proceed with Count 1. The trial court sentenced Jarrells to four years in prison, suspended his driver's license for life, and ordered a fine in the amount of $1,350.

{¶13} Jarrells now appeals, raising the following three assignments of error for review, which shall be discussed together where appropriate.

Assignment of Error One

The trial court erred in excluding [Jarrells's] expert witness testimony.
Assignment of Error Two

Jarrells was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United States Constitution where his attorney failed to preserve the trial court's error excluding expert testimony.

Assignment of Error Three

Jarrells['s] convictions for driving while under the influence were against the manifest weight of the evidence.

Motion in Limine and Ineffective Assistance of Counsel

{¶14} In the first assignment of error, Jarrells argues the trial court erred when it granted the State's motion in limine and precluded his expert, Dr. Staubus, from testifying at trial. In the second assignment of error, Jarrells argues that if we find that defense counsel failed to properly proffer the testimony, he seeks to preserve the issue for appellate review through an ineffective assistance of counsel argument.

{¶15} In the instant case, the State filed a motion in limine seeking to exclude any testimony from Dr. Staubus, arguing that his report amounted to a general attack on reliability of the breathalyzer test, which is barred by *Vega*. Jarrells opposed, arguing that Dr. Staubus's expert opinion goes to the weight to be given to the breathalyzer test. The trial court granted the State's motion, specifically as to the findings set forth in Dr. Staubus's expert report.

{¶16} Then prior to the start of trial, the court again stated that it granted the State's motion in limine with respect to Dr. Staubus's report, but allowed Jarrells to proffer testimony from Dr. Staubus. The court had the following discussion on the record:

[COURT:]  [A] motion in limine is a preliminary matter. It has to be renewed at the time of the testimony, and then we'll proceed in that fashion.

* * *

[DEFENSE COUNSEL:]   I informed Dr. Staubus of the preliminary ruling.

I've discussed it with Mr. Jarrells.   There is a significant expense in getting Dr. Staubus from Columbus to Cuyahoga County to proffer; and * * * if he's just pacing in the hall waiting to be called the expense just keeps going up by the hour.   So right now we're still hopeful that we can get him up here, but I'll report back to the Court tomorrow if that changes."

* * *

[COURT:]   Well, just in case he doesn't ever come up and testify, my ruling is to the findings the he set forth in his report.   Then, if he comes up, and we do a proffer, I'll listen to the testimony.

[DEFENSE COUNSEL:]   Thank you.

* * *

And just so we are on the record, I'm offering Dr. Staubus's opinions as contained in his report and as more fully briefed in the brief in opposition [to the State's motion in limine] to go to the weight that the jury should place on the 0.128 [breathalyzer test results] and not to the admissibility of that test result.

{¶17} It is well established that the granting or denial of a motion in limine is a tentative, interlocutory, precautionary ruling reflecting the trial court's anticipatory treatment of an evidentiary issue.  *State v. Grubb*, 28 Ohio St.3d 199, 201-202, 503 N.E.2d 142 (1986).   The ruling is a preliminary ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context.  *Id.* at 202.   Therefore,

at trial it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal.

*Id.* at 203.

{¶18} We find the instant case is analogous to *State v. Thompson*, 3d Dist. Union

Nos. 14-04-34 and 14-04-35, 2005-Ohio-2053. *Thompson* involved the similar situation where the defendant sought to introduce testimony from Dr. Staubus, which was preliminarily precluded by the trial court's grant of the State's motion in limine. The trial court found that Dr. Staubus's attacked the validity of the breath-alcohol test, a practice the Ohio Supreme Court found impermissible in *Vega*. *Id.* at ¶ 24. The trial court, however, advised defense counsel that "he would be free to make a proffer of Dr. Staubus's testimony after the jury had been impaneled." *Id.*

{¶19} On appeal, defendant argued that

the doctor's testimony was excluded in error because the trial court misconstrued it as an attack on the general reliability of the breath testing device. [Defendant] asserts that, rather, Dr. Staubus's testimony was offered to challenge the weight to be given to the breath alcohol test result.

*Id.*

{¶20} Defendant also argued that "as a result of his trial counsel's failure to proffer the testimony of Dr. Staubus and, therefore, preserve the issue of Dr. Staubus's testimony for appeal, Thompson was denied the effective assistance of counsel." *Id.* at ¶ 29.

{¶21} The Fifth District Court of Appeals found that the issue was not preserved for appeal because the defendant never proffered Dr. Staubus's testimony at trial, despite the court giving him the opportunity to do so. *Id.* at ¶ 27. The court further found that defense counsel's failure to proffer the testimony of Dr. Staubus at trial was not unreasonable. *Id.* at ¶ 32. The court stated, "[t]here are any number of reasons why counsel, as a matter of trial strategy, would not recall the doctor to testify." *Id.* *See also*

*State v. Alborn*, 5th Dist. Stark No. 2002CA00171, 2003-Ohio-973.

**{¶22}** Likewise, in the instant case, Jarrells was given permission by the trial court to proffer Dr. Staubus's testimony at trial, but the record before us reflects that he never did so. Therefore, this claimed error was not preserved for review on appeal. *Thompson* at ¶ 27

**{¶23}** Jarrells further argues that as a result of defense counsel's failure to proffer the testimony of Dr. Staubus and preserve the issue of Dr. Staubus's testimony for appeal, he was denied effective assistance of counsel. Jarrells asserts that counsel's failure to proffer Dr. Staubus's testimony fell below an objective standard of reasonable representation. Jarrells contends that but for counsel's failure to proffer Dr. Staubus's testimony, the outcome at trial would have been different.

**{¶24}** In order to establish a claim of ineffective assistance of counsel, appellant must show two components: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984). To warrant reversal, the appellant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

**{¶25}** Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267. Tactical or strategic trial decisions, even if

ultimately unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 1995-Ohio-104, 651 N.E.2d 965. Thus, in order to show that an attorney's conduct was deficient, the appellant must overcome the presumption that the attorney provided competent representation and must show that the attorney's actions were not trial strategies prompted by "reasonable professional judgment." *Strickland*, 466 U.S. at 687, 80 L.Ed.2d 674, 104 S.Ct. 2052.

{¶26} After reviewing the record in the instant case, we do not find that defense counsel's failure to proffer the testimony of Dr. Staubus at trial was unreasonable under the circumstances. Just as the *Thompson* court stated, "[t]here are any number of reasons why counsel, as a matter of trial strategy, would not recall the doctor to testify."[2] Here, defense counsel stated on the record prior to the start of trial that he was attempting to get Dr. Staubus to proffer in court, but the significant expense of him traveling from Columbus may be too much for Jarrells. We decline to find that this trial tactic was unreasonable.

{¶27} We further decline to find that the result of the proceeding would have been different. In addition to the breathalyzer test result, the jury heard testimony from Meyers regarding his observations as to Jarrells's intoxication and observed the video, in which Jarrells admitted that he drank three beers that night and drove the car ten feet

---

[2]For example, trial counsel may have concluded that Dr. Staubus's testimony, once exposed to cross-examination on the numerous unaccounted for or unexplained variables of Jarrells's condition on the night he was arrested, may not have been credible with the jury.

because Brickman got sick.

{¶28} Accordingly, the first and second assignments of error are overruled.

Manifest Weight of the Evidence

{¶29} In the third assignment of error, Jarrells argues that his convictions are against the manifest weight of the evidence.   In reviewing a manifest weight challenge, the Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, has stated:

> [T]he reviewing court asks whose evidence is more persuasive — the state's or the defendant's?   * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."   [*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997)], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶30} Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"   *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*.

{¶31} Here, Jarrells was convicted of driving while under the influence in violation of R.C. 4511.19(A)(1)(a) and (d), which state as follows:

> No person shall operate any vehicle * * * if, at the time of the operation[:]

(a) [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them.

* * *

(d) [t]he person has a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath.

{¶32} Here, Meyers testified that Jarrells was "obviously intoxicated." Based on his training, Meyers "could smell a strong odor of alcoholic beverage on [Jarrells]; glassy eyes; just slow movements." Meyers did not perform a nystagmus on Jarrells, but noticed that Jarrells did have eye nystagmus.

{¶33} It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated. *Columbus v. Mullins*, 162 Ohio St. 419, 421, 123 N.E.2d 422 (1954). *See also State v. McKee*, 91 Ohio St.3d 292, 296, 2001-Ohio-41, 744 N.E.2d 737. "An opinion with reference to intoxication is probably one of the most familiar subjects of nonexpert evidence, and almost any lay witness, without having any special qualifications, can testify as to whether a person was intoxicated." *Mullins* at 421. "Such lay testimony is often crucial in prosecuting drunk driving cases." *State v. Schmitt*, 101 Ohio St.3d 79, 83, 2004-Ohio-37, 801 N.E.2d 446.

{¶34} Moreover, the jury watched a video recording of Jarrells while he was in the OVI room. The recording shows Jarrells performing the breathalyzer test. His test result was 0.128, which was over the legal limit of .08. At the time of the test, the required form and the operational checklist were completed. In the video, Jarrells

admitted that he drank three beers that night.   He also admitted that he drove the car ten feet because Brickman got sick and he wanted to drive her around the corner.

**{¶35}** Based on the foregoing, we cannot say the jury clearly "lost its way" and created such a manifest miscarriage of justice that Jarrells's convictions must be reversed and a new trial ordered.

**{¶36}** Accordingly, the third assignment of error in overruled.

**{¶37}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR