[Cite as *State v. Foster*, 2025-Ohio-2942.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

PARIS A. FOSTER,

    DEFENDANT-APPELLANT.

CASE NO. 1-25-01

OPINION AND
JUDGMENT ENTRY

Appeal from Allen County Common Pleas Court
Trial Court No. CR2024 0027

Judgment Affirmed

Date of Decision:  August 18, 2025

APPEARANCES:

    *Chima R. Ekeh* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Paris A. Foster ("Foster"), appeals the December 19, 2024 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case originated from events on February 1, 2024 when law enforcement conducted a traffic stop on Foster following his interaction at Kyle Smith's ("Smith") residence. Smith was separately charged with illegal manufacturing of drugs and was found in possession of a large quantity of fentanyl and xylazine. During the stop, law enforcement found a bag containing suspected fentanyl under the driver's seat of Foster's vehicle.

{¶3} On March 14, 2024, the Allen County Grand Jury indicted Foster on Count One of possession of a fentanyl-related compound in violation of R.C. 2925.11(A), (C)(11)(e), a first-degree felony, and Count Two of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(b), a third-degree felony. The indictment included forfeiture specifications as to both counts. Foster appeared for arraignment on March 26, 2024 and pleaded not guilty.

{¶4} On April 11, 2024, under a superseding indictment, the Allen County Grand Jury indicted Foster on Count One of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(b), a fourth-degree felony, Count Two of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(b), a third-degree

felony, and Count Three of possession of a fentanyl-related compound in violation of R.C. 2925.11(A), (C)(11)(c), a third-degree felony.[1] The indictment included forfeiture specifications as to all of the counts. On April 16, 2024, Foster appeared for arraignment and pleaded not guilty to the superseding indictment.

{¶5} On May 7, 2024, Foster filed a motion to suppress evidence. The State filed its memorandum in opposition on June 7, 2024 and the trial court denied Foster's motion on July 17, 2024.

{¶6} On August 8, 2024, Foster filed a motion in limine seeking to exclude cell phone evidence, identified as Item 1 (a Samsung smart phone) and Item 4 (a flip phone), under Evid.R. 403 and 404(B). Specifically, Foster argued that the evidence from the flip phone lacked metadata to verify dates and times of photos, videos, and text messages, and that the text messages purporting potential drug sales violated Evid.R. 404(B) because Foster was not charged with trafficking, only possession. Further, Foster contended that text messages from the Samsung smart phone, dating back to June and August 2023, predated the offenses by five months and were not relevant to whether Foster possessed drugs on February 1, 2024, serving only to paint a negative picture of him.

---

[1] On November 15, 2024, the State filed a motion to amend the indictment to reflect that Count Three should be charged under the "equals or exceeds five grams but is less than ten grams" language of R.C. 2925.11(C)(11)(c), which the trial court granted on November 18, 2024.

{¶7} Though the State did not initially respond to Foster's motion, the State, on November 7, 2024, filed a motion reflecting its intent to introduce evidence pursuant to Evid.R. 404(B) at trial. In its motion, the State requested the trial court to determine that detailed factual evidence relating to Foster's drug activity in the days leading up to the incident, shown through conversations on the flip phone found on his person (Item 4), was admissible under Evid.R. 404(B) and R.C. 2945.59 to prove identity or knowledge. In particular, the State argued that this "other acts" evidence was relevant to identity and knowledge because the case involved three counts of illegal substance possession. On November 14, 2024, Foster filed a memorandum in opposition to the State's motion to introduce evidence pursuant to Evid.R. 404(B) at trial, largely challenging the timeliness of the State's motion.

{¶8} On October 28, 2024, Foster filed a motion for supplementary discovery, seeking all evidence and testimony from Smith's trial. Foster contended that this evidence was relevant to his charges of possessing fentanyl-related compounds, given that these substances were found after he encountered Smith, who was allegedly involved in manufacturing and possessed a larger quantity of fentanyl-containing drugs. Relevantly, Foster contended that this evidence could show that Smith was the supplier, potentially negating Foster's "reason to know" that the drugs found in his possession contained fentanyl. The next day, Foster filed a motion to continue his jury trial, scheduled for November 18, 2024, because his

newly appointed counsel needed more time to receive and review requested discovery. On November 6, 2024, the trial court denied Foster's supplemental discovery request and motion to continue, without providing reasoning.

{¶9} On November 7, 2024, Foster subpoenaed Investigator Deana Lauck ("Lauck") from the Lima Police Department and two Ohio Bureau of Criminal Investigation ("BCI") employees, Kristin Canfield ("Canfield") and Tyler Tomlins ("Tomlins"), seeking their testimony and various documents relating to the Smith case. On November 8, 2024, the State filed motions to quash each subpoena, arguing the requests circumvented discovery rules and that the Smith case materials had already been deemed irrelevant by the trial court. That same day, Foster filed a memorandum in opposition to the State's motions to quash, arguing that the State was withholding discovery and that the subpoenas sought testimony from relevant witnesses to support a defense theory that Smith may have planted the drugs in Foster's vehicle.

{¶10} After a hearing on November 14, 2024, the trial court partially granted the State's motions to quash, deeming much of Foster's subpoena requests a "fishing expedition." In particular, the trial court allowed subpoenas for Canfield, Tomlins, and Lauck but limited their testimony and documentation to specific reports and inventory sheets, while also ordering the production of chain of custody documents for the drugs at issue in Foster's case.

{¶11} On November 18, 2024, Foster withdrew his pleas of not guilty and entered no contest pleas, under a negotiated plea agreement, to the counts and specifications in the superseding indictment. In exchange for his pleas, the State agreed to forgo a sentencing recommendation. The trial court accepted Foster's no contest pleas, found him guilty, and ordered a pre-sentence investigation.

{¶12} On December 19, 2024, the trial court sentenced Foster to 12 months in prison on Count One, 24 months in prison on Count Two, and 30 months in prison on Count Three. The trial court ordered Foster to serve the prison terms consecutively for an aggregate sentence of 54 months in prison. The trial court also ordered the forfeiture of the currency identified in the forfeiture specification.

{¶13} On January 10, 2024, Foster filed his notice of appeal. He raises four assignments of error for our review. For ease of our discussion, we will begin by addressing Foster's third assignment of error, followed by his first, second, and fourth assignments of error.

**Third Assignment of Error**

**The Trial Court Abused Its Discretion By Granting In Part The State's Motion to Quash Appellant's Subpoenas.**

{¶14} In his third assignment of error, Foster argues the trial court abused its discretion by partially granting the State's motion to quash his subpoenas directed at Lauck, Canfiled, and Tomlins. Foster specifically contends that the subpoenaed

documents were evidentiary and relevant, not a "fishing expedition," and were necessary for trial preparation after his discovery requests were denied.

*Standard of Review*

{¶15} "An appellate court applies an abuse of discretion standard when reviewing a trial court's decision to quash a subpoena." *State v. Hansen*, 2013-Ohio-1735, ¶ 31 (3d Dist.). An abuse of discretion signifies that the trial court's decision was characterized by unreasonableness, arbitrariness, or unconscionableness. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

{¶16} "Under Crim.R. 17(C), a subpoena may be used to command a person to produce in court books, papers, documents, and other objects." *State v. Blair*, 2013-Ohio-646, ¶ 44 (3d Dist.). "However, the court upon motion of a party may quash or modify the subpoena if compliance would be unreasonable or oppressive." *Id.* "Pursuant to Crim.R. 17(C), when deciding a motion to quash a subpoena duces tecum requesting the production of documents prior to trial, a trial court shall hold an evidentiary hearing." *In re Subpoena Duces Tecum Served Upon Atty. Potts*, 2003-Ohio-5234, paragraph one of the syllabus.

> At the hearing, which may be held in camera, the proponent of the subpoena must demonstrate that the subpoena is not unreasonable or oppressive by showing "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in

advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"

*Id.*, quoting *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).

{¶17} In this case, after an evidentiary hearing, the trial court determined that "much of what the defense seeks appears to be a fishing expedition" and that Foster failed to meet the four requirements laid out in *Nixon*. (Doc. No. 130). Critically, the trial court found that Foster's broad requests for an entire separate case file (seeking the entire lab files and investigative materials from the Smith case) did not sufficiently establish that the documents were evidentiary and relevant to his specific defense and not merely part of a general inquiry. The trial court further found that Foster failed to provide a specific basis to show that the extensive records sought from the Smith case were truly necessary for his proper trial preparation, beyond mere conjecture. That is, the trial court determined that Foster's theories, such as a "mix-up" of evidence or Smith planting drugs, were largely speculative.

{¶18} Nonetheless, the trial court permitted the subpoenaed witnesses to testify and bring specific reports related to the presence of fentanyl, xylazine, heroin, and para-fluoro-fentanyl in the substances tested in the Smith case. The trial court also ordered the State to produce chain of custody documentation if it had not already done so.

{¶19} Thus, given the speculative nature of Foster's claims and his failure to satisfy the *Nixon* factors, the trial court reasonably limited the scope of the

subpoenas to specific laboratory reports and inventory sheets directly related to the controlled substances, rather than allowing unfettered access to an entire separate case file. Consequently, the trial court's measured approach was a proper exercise of its discretion in regulating the subpoena process and preventing abuse. Accordingly, we conclude the trial court did not abuse its discretion by partially granting the State's motion to quash Foster's subpoenas.

**{¶20}** Foster's third assignment of error is overruled.

### First Assignment of Error

**The Trial Court Erred In Denying Appellant's Supplementary Discovery Request.**

**{¶21}** In his first assignment of error, Foster argues that the trial court abused its discretion by denying his supplementary discovery request and motion to compel discovery from Smith's case. In particular, Foster contends that this information was exculpatory and relevant to his defense, particularly regarding whether he had reason to know about the fentanyl in the drug compound found in his car, given Smith's alleged role as the manufacturer.

*Standard of Review*

**{¶22}** "We review a trial court's decision on a motion to compel discovery under an abuse of discretion standard." *State v. Wilkie*, 2017-Ohio-1487, ¶ 28 (3d Dist.). Once again, an abuse of discretion implies the trial court acted unreasonably, arbitrarily, or unconscionably. *Adams*, 62 Ohio St.2d at 157-158.

*Analysis*

{¶23} Crim.R. 16(B)(5) requires that, "[u]pon receipt of a written demand for discovery by the defendant" the prosecuting attorney must disclose "[a]ny evidence favorable to the defendant and material to guilt or punishment . . . ." In regulating the discovery process, Crim.R. 16(L)(1) provides that "[t]he trial court may make orders regulating discovery not inconsistent with this rule."

> "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

*Id.*

{¶24} In general, prosecutors have a duty to learn of any favorable evidence, including from related investigations, known to others acting on the government's behalf, such as the police. *State v. Nichols*, 2023-Ohio-4364, ¶ 11 (3d Dist.). "'Yet even so, in order to invoke a right to disclosure, or a concomitant prosecutorial duty to search records, a defendant must make a preliminary showing that the requested files actually contain material, exculpatory information.'" *Id.*, quoting *State v. Sanders*, 92 Ohio St.3d 245, 261 (2001). "A defendant is entitled to have a state agency's files reviewed to determine whether they contained information that probably would have changed the outcome of his trial, i.e. the evidence is material." *State v. Ruggles*, 2020-Ohio-2886, ¶ 20 (12th Dist.).

{¶25} "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the trial would have been different." *Id.* at ¶ 21. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Id.* "The 'mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.'" *Id.*, quoting *United States v. Agurs*, 427 U.S. 97, 109-110 (1976). "Indeed, 'undisclosed evidence is not material simply because it may have helped the defendant to prepare for trial.'" *Id.*, quoting *State v. Brown*, 2007-Ohio-4837, ¶ 49.

{¶26} In this case, the trial court denied Foster's supplemental discovery request, without providing its reasoning, on November 6, 2024. While this denial lacked specific explanation at the time, the trial court's subsequent November 15, 2024 judgment entry on the State's motions to quash implicitly clarified its stance, stating that "much of what the defense seeks appears to be a fishing expedition." (Doc. No. 130). Notwithstanding this implicit explanation, Foster points out that, prior to this, the trial court unofficially agreed with the State in chambers on October 30, 2024 that discovery from Smith's case was not relevant to Foster's case.

{¶27} On appeal, Foster argues the trial court abused its discretion by denying his supplementary discovery request and motion to compel the discovery file from the State's case against Smith, contending that the information, where

-11-

Smith was charged with manufacturing and possessing a larger quantity of a substance containing fentanyl, was exculpatory and relevant. He theorizes that, if Smith manufactured the drug blend, this information could have been crucial to determining whether Foster had "reason to know" of the fentanyl in the compound found in his car.

{¶28} Based on our review of the record in this case, we conclude that the trial court did not abuse its discretion by denying Foster's supplementary discovery request and motion to compel. Determinately, Foster's nebulous claims about the evidence he sought from the Smith case file lacked a specific demonstration of its materiality or exculpatory nature, failing to show it would have benefited his defense or affected the trial's outcome. *Compare State v. Kelley*, 2024-Ohio-157, ¶ 47 (8th Dist.) (concluding that the trial court did not abuse its discretion by denying Kelley's motion to compel discovery because Kelley's claims were speculative since he failed to sufficiently demonstrate that the requested records contained material or exculpatory evidence).

{¶29} In particular, Foster's theories about the evidence in the Smith case such as a "mix-up" of evidence or Smith placing drugs in his car, were purely speculative. *Compare State v. Stacy*, 2024-Ohio-4539, ¶ 87 (11th Dist.) (determining that Stacy's claims were speculative because he failed to identify specific, necessary information or documents, and merely hypothesized the existence of undisclosed exculpatory evidence without a foundational basis). That

is, Foster never demonstrated that Smith blended the drugs or provided an argument as to why it was necessary to provide all of the evidence from the Smith case. Indeed, the trial court was not required to permit a broad "fishing expedition" into another case's discovery without a sufficient foundational showing. *See State v. Clinton*, 2024-Ohio-4720, ¶ 156 (6th Dist.) (determining that the trial court did not abuse its discretion by denying speculative discovery requests).

**{¶30}** Furthermore, even if we assume without deciding that the trial court erred by denying Foster's *comprehensive* discovery request, Foster cannot show that he would have suffered any prejudice, particularly given the trial court's subsequent partial granting of his subpoenas (addressed in his third assignment of error). Significantly, even though the case ultimately did not proceed to trial, the partial granting of the subpoenas directly addressed Foster's core need for information regarding the substances and their origin, thereby mitigating any potential prejudice from the initial broad discovery denial.

**{¶31}** Consequently, we conclude that the trial court's denial of Foster's supplementary discovery request and motion to compel was a reasonable exercise of the trial court's broad discretion in regulating discovery.

**{¶32}** Foster's first assignment of error is overruled.

**Second Assignment of Error**

**The Trial Court Erred In Denying Appellant's Motion To Continue The Jury Trial.**

{¶33} In his second assignment of error, Foster asserts the trial court erred by denying his motion to continue the jury trial, arguing this denied his trial counsel a reasonable opportunity to prepare his case for trial. Specifically, Foster contends that the denial was unreasonable and arbitrary, especially since his new counsel had only been on the case for a month and needed time to review requested supplementary discovery.

*Standard of Review*

{¶34} An appellate court reviews a trial court's denial of a continuance under an abuse of discretion standard. *State v. Ames*, 2019-Ohio-2632, ¶ 29 (3d Dist.). Again, an abuse of discretion implies the trial court acted unreasonably, arbitrarily, or unconscionably. *Adams*, 62 Ohio St.2d at 157-158.

*Analysis*

{¶35} In evaluating a motion for a continuance, a trial court should consider factors such as the length of the requested delay, prior continuance requests, inconvenience to parties, witnesses, counsel, and the court, and whether the delay is for legitimate reasons or is dilatory, purposeful, or contrived. *Ames* at ¶ 30. The trial court must also consider whether the defendant contributed to the circumstances leading to the request. *Id.* There are no mechanical tests for deciding if a continuance denial violates due process; the answer depends on the specific circumstances of each case and the reasons presented to the trial court at the time of the request. *Id.* at ¶ 29. These considerations are weighed against concerns like the

-14-

trial court's right to control its docket and the public's interest in the prompt dispatch of justice. *Id.* *See also State v. Pattson*, 2010-Ohio-5755, ¶ 19 (2d Dist.) ("In determining whether a trial court abused its discretion when ruling on a motion for continuance, a reviewing court must weigh any potential prejudice to the defendant against the trial court's 'right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'"), quoting *State v. Unger*, 67 Ohio St.2d 65, 67 (1981).

**{¶36}** In this case, Foster's new trial counsel appeared in the case on October 8, 2024, and the trial court denied his continuance on November 6, 2024, leaving 12 days to prepare for trial. Critically, the premise of Foster's request for the continuance was the need for his new trial counsel to receive and review supplementary discovery, which the trial court denied.

**{¶37}** Because, as we determined in his first assignment of error, Foster was not entitled to the broad discovery that he sought from the Smith case, the justification for a trial continuance was eliminated. *Compare State v. Graham*, 2022-Ohio-1770, ¶ 44 (5th Dist.) (determining that the trial court did not abuse its discretion by denying the continuance because Graham was not entitled to the requested discovery since it was not owed or it was already provided). Moreover, even after the discovery request was denied, Foster's trial counsel still had nearly two weeks to prepare for trial.

{¶38} Therefore, with the underlying need for the continuance negated by the valid denial of the discovery request and considering the trial court's right to control its docket and the public's interest in prompt justice, the trial court's decision to deny Foster's motion to continue trial was a reasonable exercise of its discretion and not unreasonable, arbitrary, or unconscionable. *See State v. Harmon*, 2010-Ohio-836, ¶ 18 (2d Dist.) (concluding that that a defendant cannot claim a due process violation from a denied continuance, even if it led to a no contest plea, if no abuse of discretion occurred, as such pressures are inherent in the criminal justice process).

{¶39} Foster's second assignment of error is overruled.

**Fourth Assignment of Error**

**The Trial Court Erred In Overruling Appellant's Motion In Limine To Exclude Other-Acts Evidence.**

{¶40} In his fourth assignment of error, Foster argues the trial court erred by implicitly denying his motion in limine to exclude other-acts evidence. He contends this evidence was irrelevant to any proper purpose under Evid.R. 404(B), and even if admissible, its prejudicial effect substantially outweighed its probative value under Evid.R. 403(A). However, we need not consider whether the trial court erred by denying his motion in limine because, by pleading no contest, Foster did not preserve his argument for appellate review.

**{¶41}** A motion in limine is a pretrial request asking the court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to the moving party that curative instructions would be ineffective in preventing a predispositional effect on the jury. *State v. Miller*, 2018-Ohio-4648, ¶ 8 (3d Dist.). "'A ruling on a motion in limine reflects the court's anticipated treatment of an evidentiary issue at trial and, as such, is a tentative, interlocutory, precautionary ruling.'" *Id.*, quoting *State v. French*, 72 Ohio St.3d 446, 450 (1995). "'The established rule in Ohio is that the grant or denial of a motion in limine is not a ruling on the evidence.'" *Id.*, quoting *State v. Thompson*, 2005-Ohio-2053, ¶ 26 (3d Dist.). "'In deciding such motions, the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial.'" *Id.*, quoting *Defiance v. Kretz*, 60 Ohio St.3d 1, 4 (1991). Therefore, when a motion in limine is granted, finality does not attach. *Id.*

**{¶42}** To preserve for appeal any error in the trial court's ruling on a motion in limine, the objecting party must attempt to introduce the evidence at trial, by proffer or other means, so the court can make a final determination on its admissibility. *Id.* at ¶ 9; *State v. Brown*, 38 Ohio St.3d 305 (1988), paragraph three of the syllabus ("A denial of a motion in limine does not preserve error for review. A proper objection must be raised at trial to preserve error."). Then, an appellate court will review the correctness of the trial court's ruling on the objection made at trial, rather than the initial ruling on the motion in limine. *Miller* at ¶ 9.

**{¶43}** In this case, instead of proceeding to trial and seeking the introduction of the disputed evidence to preserve any error in the trial court's admissibility ruling for appeal, Foster pleaded no contest to the counts and specifications in the superseding indictment. *Accord id.* at ¶ 10. By pleading no contest, a defendant voluntarily waives the right to appeal the ruling on the motion in limine. *Id.* Therefore, by entering pleas of no contest, Foster waived his right to appeal the trial court's decision denying his motion in limine. *Accord id.*

**{¶44}** Foster's fourth assignment of error is overruled.

**{¶45}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WALDICK, P.J. and MILLER, J., concur.**

Case No. 1-25-01

# **<u>JUDGMENT ENTRY</u>**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
William R. Zimmerman, Judge


_____
Juergen A. Waldick, Judge


_____
Mark C. Miller, Judge

DATED:
/hls

-19-